IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR - 8 2004

UNITED STATES OF AMERICA,

Plaintiff,

v.   No. CR 03-1217 BB

MICHAEL STEWART-POPPELSDORF,

Defendant.

## MEMORANDUM OPINION
## IN SUPPORT OF
## ORDER GRANTING MOTION TO SUPPRESS

THIS MATTER is before the Court on Defendant's Motion to Suppress Evidence [#48], and the Court having reviewed the briefs of the parties, conducted a full evidentiary hearing on February 26, 2004, and the Government's *Motion to Reconsider* [#61], still finds the motion should be Granted. This opinion, together with the Court's comments from the bench, will constitute my Findings and Conclusions.

### *Facts*

On June 1, 2003, Officer Arcenio Chavez, New Mexico State Police, was in a marked police car on patrol duty along Interstate 40 west of Gallup, New Mexico. He was parked facing east finishing another traffic investigation. About 6:45 AM, he noticed a white 2003 Chrysler Sebring drive by his patrol car headed east and the shoulder straps were not visible for either the driver or the passenger. Officer Chavez

pulled up along side the Defendants' vehicle and confirmed neither occupant appeared to be wearing seat belts, and then activated his lights and pulled over the car to issue a citation. Officer Chavez stopped the car near mile post 18 outside of Gallup.

Vanessa Garcia had rented, and was driving, the stopped vehicle and Defendant was the passenger. The stop was video taped by the video recorder mounted in Officer Chavez's patrol car. Officer Chavez requested Ms. Garcia's license and registration. After she produced her license and rental agreement, Officer Chavez asked Ms. Garcia to accompany him back to his patrol car so he could write out a citation for failure to use seat belts. The tape demonstrates Ms. Garcia was clearly angry and continued to argue the ticket was unjustified. Officer Chavez told her she could contest it and immediately began questioning her about where she was coming from, going to, and the identity and relationship of her passenger. It is clear from the tape Ms. Garcia kept asking questions related to the amount of the fine and how to challenge it, while Officer Chavez was intent on interrogating her on other subjects.

After examining Ms. Garcia's driver's license and rental agreement, Officer Chavez went back to her vehicle and checked the vehicle identification number (VIN) on both the dashboard and inside the driver's door. While doing that Officer Chavez began to interrogate Garcia's passenger, Michael Stewart-Poppelsdorf, the Defendant, about their relationship. Although he was supposed to be checking the VIN to determine the year of the vehicle, Officer Chavez forgot to do that and had to go back

to do it after he again asked Ms. Garcia how long she'd known Stewart-Poppelsdorf and what they were doing at Bluewater Lake (which Chavez had misidentified as being west of their current location at mile marker 18).

When Officer Chavez returned to the vehicle to check the VIN a second time, he engaged in the following exchange with Defendant:

> OC   Sir, I'm kinda confused here. Maybe you can help me out. So where you all coming from? – Just have a few questions if you don't mind, OK? So where were you coming from?
>
> MSP   I'm not under an investigation?
>
> OC   Yes, I know. I understand. All righty.
>
> MSP   What does it matter where we go or where we come from?
>
> OC   Because nothing is matching up here. She says you're coming from somewhere else, and you say you're coming from somewhere else. It's kinda confusing. It's real confusing. I'm just a patrolman out here working.
>
> 0659 OC   Sir, are there any weapons in the vehicle?
>
> MSP   No weapons.
>
> OC   No weapons. Any large amounts of money? Any marijuana? Any cocaine? Any heroin? Any methamphetamine? Nothing in the vehicle? Do you have any personal belongings? What do you have?
>
> MSP   Pair of pants, shirts.
>
> OC   All right. Can I search those items? No?
>
> MSP   No.

(OC is Officer Chavez; MSP is Michael Stewart-Poppelsdorf)

3

After being denied permission to search the vehicle by Mr. Poppelsdorf, Officer Chavez confronted Ms. Garcia:

      OC    OK, if you'd just look right here at me. Any weapons in the vehicle?

      VG    No.

0700  OC    Any marijuana in the vehicle?

      VG    No.

      OC    Any cocaine in the vehicle?

      VG    No.

      OC    Any heroin in the vehicle?

      VG    No.

      OC    Any methamphetamine in the vehicle?

      VG    No.

      OC    Can I search the vehicle?

      VG    Um, I don't see why not. What did he say? Just my stuff and his stuff.

      OC    Well, he said 'no."

      VG    No.

      OC    No?

      VG    OK, so what

      OC    OK, so what I am going to do is tow your vehicle. I am going to get a search warrant. I am going to call a K-9, and after we run the K-9 around the vehicle, then I'm going to get a search warrant for your vehicle.

    VG    All that for a seatbelt ticket!

(OC is Officer Chavez; VG is Vanessa Garcia)

"To determine the reasonableness of an investigative detention, we make a dual inquiry asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Hunnicut*, 135 F.3d 1345, 1348 (10th Cir. 1998) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). This stop was not obviously pretextual. *See Whren v. United States*, 517 U.S. 806, 812 (1996). Since a legitimate traffic stop and resulting citation do not authorize an officer to search the vehicle, however, it would appear Officer Chavez immediately began establishing a basis to request consent to search or reasonable suspicion. *Knowles v. Iowa*, 525 U.S. 113 (1998). This immediate shift in Officer Chavez's questioning to the subject of Garcia's destination and relationship with Poppelsdorf might cause the Court to wonder about the real purpose behind the stop. *United States v. Elliott*, 107 F.3d 810 (10th Cir. 1997) (in the absence of reasonable suspicion, driver must be allowed to proceed once citation issued).

It is the second stage, then, where I must conclude the Officer crossed the constitutional barrier. *Florida v. Royer*, 460 U.S. 491, 502-3 (1983) (when police action exceed the bounds of reasonable suspicion a seizure becomes an arrest); *United States v. Perez*, 37 F.3d 510, 514 (9th Cir. 1994) (same). It does not appear Officer Chavez's

5

checking the VIN twice, *see United States v. Caro*, 248 F.3d 1240 (10th Cir. 2001), or his use of that opportunity to question passenger Poppelsdorf was justified by the original purpose of the stop or anything developed prior to that point. *United States v. Salzano*, 158 F.3d 1107, 1111-5 (10th Cir. 1998); *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997).

The Government relies on several factors to justify Ms. Garcia's continued detention: (1) Defendant was driving east on Interstate 40 between Flagstaff and Albuquerque, a known drug route. Officer Chavez testified he was taught Phoenix and Tucson, neither of which is located on I-40, were source cities and he has made all of his successful drug busts on eastbound I-40. In fact, it would be easy to document any city of more than 100,000 population as a "drug source," and the fact Phoenix and Tucson are located substantially south of I-40, on I-10, makes this even less credible. *See United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998). (2) Ms. Garcia and Mr. Poppelsdorf gave contradictory statements on what they had been doing or how long they had known each other. However, inconsistent answers regarding historical information would seem less suspicious than inconsistencies about their Albuquerque destination or the purpose of their trip. *See United States v. Jones*, 269 F.3d 919, 928 (8th Cir. 2001). While this Court confessed to some concern as to these factors, *see United States v. Williams*, 271 F.3d 1262, 1268-9 (10th Cir. 2001), Garcia's early morning confusion as to location would seem more related to a reasonable concern

about an impaired driver than drugs from Phoenix or Tucson. Moreover, early morning travel from a "source city" and inconsistent responses about a companion were found not to support reasonable suspicion in *Reed v. Georgia*, 448 U.S. 438 (1980); *see also United States v. White*, 890 F.2d 1413, 1417 (8th Cir. 1989). (3) Both Garcia and Defendant demonstrated increasing rather than decreasing nervousness, and Officer Chavez testified the average motorist becomes less nervous. *See United States v. Fernandez*, 10 F.3d 874 (10th Cir. 1994) (increasing nervousness also not sufficient to prolong encounter). While it is true Officer Chavez apologized to Ms. Garcia for making her nervous, it is also clear that both Ms. Garcia and Mr. Stewart-Poppelsdorf became more agitated the longer the interrogation continued. Officer Chavez abandoned several other factors he originally listed during cross-examination, and the Court found this testimony completely credible.[1]

As mentioned, the Government has filed its *Motion to Reconsider Suppression of Evidence*. The Court has reviewed this motion but is not persuaded. Accordingly, it shall be denied.

## ORDER

For the above stated reasons, Defendant's *Motion to Suppress* is GRANTED, and the Government's *Motion to Reconsider Suppression of Evidence* is DENIED.

---

[1] For example, Officer Chavez agreed that a rental car driving the interstate with a single key on an agency key chain meant nothing.

7

Dated at Albuquerque this \_\_5th\_\_ day of March, 2004.

*/s/ Bruce D. Black*

**BRUCE D. BLACK**
**United States District Judge**